Arthur Gr. Klein, J.
Petitioners have renewed their motion to punish respondent Police Commissioner for contempt by virtue of his alleged failure to obey a mandate of this court. On a previous application for the same relief, the court, although dissatisfied with respondent’s compliance with its order, was of the opinion that petitioners had failed to establish that the respondent’s conduct had been willful and deliberate and, accordingly, denied the motion to punish for contempt (N. Y. L. J., Oct. 11, 1960, p. 14, col. 1). This was on condition, however, that within 30 days from date of service of a copy of the order entered therein, ‘ ‘ respondent takes such necessary action as will truly effectuate a compliance with the court’s order by eliminating the practice of having officers regularly perform the duties of higher positions without appointment to the title, grade and salary of such higher position”.
Although the court’s decision in the original litigation between the parties (19 Misc 2d 765) set forth in clear unambiguous language the fact that the acts complained of were in violation of the State Constitution and Civil Service Law, and although the decision has been unanimously affirmed by both the Appellate Division and the Court of Appeals (10 A D 2d 606, 8 N Y 2d 794), the court, nevertheless, in its decision on the prior motion to punish for contempt went to great lengths in further clarifying the original order, with the view in mind of dispelling *531 any doubts respondent may have entertained with respect to its true meaning and with the further view of finally terminating the litigation.
The court therein stated, “ Now that the court has set forth in great detail the manner in which respondent has failed to carry out the court’s mandate there can remain no further legal excuse for respondent’s failure to expeditiously proceed within the afore-mentioned 30-day period in effecting compliance. Upon his failure to do so, petitioners may renew their application ’ ’.
The 30-day period having expired, petitioners have renewed their motion, alleging that respondent has failed to comply with the court’s mandate. Similarly, as on the first motion, the Patrolmen’s Benevolent Association, appearing amicus curias, joins petitioners in their application to punish respondent for contempt.
In addition to their allegation that respondent has failed to carry out the court’s order, petitioners now cite, for the first time, additional instances of alleged out-of-title work. The only matter before the court concerns itself with the situation existing at the inception of the litigation. Therefore, the new matter not previously before the court may not properly be introduced at this time and will be disregarded.
Heretofore, the court found five categories of out-of-title assignments:
(1) Former “ acting ” Sergeants
(2) Former “acting” Lieutenants
(3) Former “ acting ” Captains
(4) Lieutenants assigned as Supervisors of Patrol
(5) Lieutenants assigned to investigate complaints of serious misconduct.
It is in relation to these five classifications that the court directed its attention and ordered respondent to eliminate the out-of-title assignments.
On the first motion, the court found 24 instances where former “acting” sergeants were working out of title. In arriving at this figure, the court excluded from its computation former acting sergeants Kline, Sabino and Young who, in respondent’s first affidavit (Sept. 16, 1960) were awaiting civilian replacements. It now appears that these three officers have not yet been replaced. Consequently, there are 27 officers in this group.
With respect to former “ acting ” sergeants Barry, Briggs, Carley, Davis and Smith, formerly assigned as physical train *532 ing instructors at the Police Academy, respondent now avers that these officers have been relieved of their supervisory responsibilities and are designated “ Physical Training Assistants An examination of respondent’s first affidavit with respect to these same men states “ [they] are assigned to the Police Academy as instructors in physical training. Their duties do not include supervision — but merely instruction”. If these men were without supervisory responsibilities on the occasion of the first motion, it is obvious that no change in their status has since been effected. The same situation exists with respect to the two former “ acting ” sergeants assigned to command firearms, units. Walsh and Leonard. With respect to former “ acting” sergeant Behrens, respondent advances the same argument rejected by the court on the prior motion. Former “acting” sergeants Dale, Filer, Healy, Loures, Olsewski and O’Neill were all described in the first affidavit as being without supervisory duties. Respondent’s present assertion that they are performing their duty under the supervision of a superior officer and are exercising no supervisory duties is therefore meaningless.
From the foregoing it is apparent that the 17 former “ acting ’ ’ sergeants described above are still engaged in the same duties they were performing at the time of the first motion.
Although respondent was directed to comply within a designated 30-day period (Oct. 19 to Nov. 18,1960), in some instances changes were not effected within the prescribed period but, instead, took place shortly thereafter. The court, recognizing the fact that certain administrative problems were created by the required changes, will consider all changes as having been timely made. The sum total of respondent’s compliance with the first of the five designated groups, that of former “ acting ” sergeants amounts to 10 valid changes of duty out of a total of 27.
The matter in respondent’s affidavit on the prior motion wherein he sought to establish the fact that many of the former “ acting ” officers in this group were exercising no supervision and were, therefore, in title was heretofore rejected on the ground that a binding determination having- already been made that these former “ acting ” sergeants were in fact engaged in out-of-title assignments, therefore this matter could not be argued de novo. Respondent also sought to establish that former “ acting ” officers in the other groups were actually not performing- out-of-title duties. For the above-stated reason, this, too, was rejected. At the time of the original litigation, respondent, instead of challenging- petitioners’ allegation that *533 former “acting” officers were performing out-of-title duties, proceeded instead on other grounds. Accordingly, on the undisputed facts before me, a determination was made that they were working out of title. Consequently, respondent, now, as on the previous motion, is precluded from arguing, de novo, that these officers are properly in grade.
With respect to former “acting” lieutenants, the court previously found 49 instances of out-of-title work. Excluded from this computation were two former ‘ ‘ acting ’ ’ lieutenants, Chwast and Blaikie, who, it was asserted, were retiring. Both of these officers have been replaced by sergeants.
Petitioners contend that the replacement of these two former “acting” lieutenants by sergeants does not constitute compliance with the court’s order. In the absence of any valid proof that these replacements are performing the identical duties of the officers replaced, the court finds nothing improper herein.
Although there were previously 49 instances of out-of-title assignments, reference is now made by both sides to only 37 officers. With respect to 15 of the 37, respondent concedes that he has made no changes in assignments and relies as authority therefor on certain language used by the court on the occasion of the first motion. The court, after referring to respondent’s wide latitude in assigning personnel, especially with respect to the detective divisions, then proceeded to differentiate between that latitude and the present case. A reading of the court’s decision readily indicates that the inference respondent seeks to find therein does not exist and is completely unwarranted. The court, therefore, finds that only 22 valid changes have been made in this group.
With respect to former “ acting ” captains, the court excluded from its computation the case of former “acting” Captain Tiersch by virtue of the fact that he had retired. This former ‘‘ acting ’ ’ captain has now been replaced by a lieutenant. For the reasons set forth regarding the replacement of two former “ acting ” lieutenants (supra), the court finds this replacement as well as that of former “ acting ” Captain Meyer proper.
Once again respondent advances as an excuse for failing to replace six former “ acting ” captains the same reason hitherto rejected with respect to the 15 former “acting” lieutenants in the detective division. With respect to former “acting” Captains Bice and Walsh, respondent advances the argument that they are possessed of unique backgrounds. This argument was rejected on the occasion of the first motion.
The court finds that of the group of 21 former “acting” captains, respondent .has complied in only 13 instances.
*534 There remain two further categories: (a) the 37 lieutenants supervising patrol and (b) the 9 lieutenants investigating complaints of serious misconduct. With respect to the first of these groups, respondent’s compliance is 100%, despite petitioners’ contention that in replacing the 37 lieutenants involved with only 22 captains, respondent has disobeyed the court’s mandate. It is neither for the court nor the petitioners to question how and in what manner the Police Commissioner chooses to deploy his forces — nor is it the concern of anyone save the Commissioner from whence come the replacements. The entire litigation herein concerns itself and is limited to thq elimination of out-of-title assignments. It affirmatively appears that these 37 officers heretofore found to be working out of title have been relieved of their assignment. Compliance with this phase of the order is therefore -100%.
With respect to the 9 lieutenants investigating complaints of serious misconduct, respondent’s compliance is exactly 0%. This final category of officers referred to lieutenants investigating complaints of serious misconduct by members of the Police Department. Respondent contends that since these nine lieutenants have been divested of their responsibility to supervise investigations of this nature, he has fully complied with this phase of the court’s order. This tenuous argument is devoid of all merit and unworthy of serious consideration for, in the clearest language imaginable, reference was made to the investigation of complaints and not the supervision thereof.
In summary, out of a total of 131 out-of-title assignments, respondent has eliminated 82 thereof, or roughly, 62%. Prom a reading of this tabulation, it is apparent that respondent has failed to substantially comply as directed. Having delineated in great detail the areas of respondent’s noncompliance, and having afforded respondent ample opportunity to effect the necessary compliance by eliminating out-of-title assignments, the court comes to the obvious and inescapable conclusion that respondent’s disobedience to its mandate has been willful and deliberate.
That the out-of-title assignments existed for many years under administrations of former police commissioners and that this condition was inherited by respondent does not lessen the degree of respondent’s disobedience to the court’s mandate. Nor does respondent’s natural reluctance to replace uniquely trained personnel excuse his disobedience.
In originally directing respondent to eliminate out-of-title work, the court was but following the principles enunciated in Matter of O’Reilly v. Grumet (308 N. Y. 351) and Matter of *535 Clifford v. Police Comr. (152 N. Y. S. 2d 923, mod. 2 A D 2d 674). Regardless of the consequences, it was incumbent upon respondent to effect such changes in his department as would fully insure compliance with these principles, for so long as out-of-title assignments continued, the opportunities of patrolmen to advance themselves through the medium of open competitive promotion examinations was being seriously thwarted.
In order to protect the rights of petitioners and others similarly situated and at the same time to prevent a disruption of the Police Department, the court, from the very inception of the litigation, sought to bring both sides together with the view of working out a reasonable compromise of the differences existing between the respective parties, but its efforts met with no success. The passage of time has but engendered an unnecessary aura of bitterness in the department and has driven both sides further apart.
While the court sympathizes with respondent’s plight, it cannot disregard the obvious fact that petitioners’ rights have been seriously prejudiced.
Transcending all this and of yet greater significance is the fact that the lawful mandate of the court has been willfully disobeyed — and to further aggravate this insult to the court, it has been flaunted by no less a personage than the chief law-enforcement officer himself!
Public respect for our law, its officers and institutions would rapidly disintegrate were we to permit any individual to successfully place himself above that law. To preserve and promote this priceless respect for the law and. at the same time to protect the very dignity of the court itself, this open defiance of its mandate cannot be tolerated.
Although the situation is one of respondent’s own making, no doubt occasioned by his unyielding conviction that only he and he alone knows what is best for the efficient administration of his department and of interpreting all grievances, legitimate or otherwise, of the rank and file thereof as but attempts to interfere with, and as personal challenges to, this efficient administration, the court nevertheless finds itself faced with the unpleasant task, which it cannot shirk, of having to pronounce judgment on a conscientious public servant.
The respondent is adjudged in contempt. He may purge himself by complying with the order of this court, entered October 19, 1960, within 10 days from the date of service of a copy of the order to be settled herein with notice of entry thereof. Upon proof by affidavit of his noncompliance, commitment will issue.