Richard J. Cardamons, J.
The petitioner was appointed as a police patrolman in the Village of Herkimer, Herkimer County, New York, on July 6, 1970. He reported for work on Monday, July 13, 1970 and worked for just short of five weeks until August 14,1970, when he was notified by the Acting Police Chief of the village that his services were being terminated. He has brought this proceeding against the respondent Mayor, Police Commissioner, Acting Police Chief, and Board of Trustees, all of the Village of Herkimer, claiming that his termination on August 14, 1970 was arbitrary, unreasonable, capricious and done with malice.
The petitioner took the civil service test administered by the Herkimer County Civil Service Commission for police patrolman for the Village of Herkimer in October, 1968 and passed it with a grade of 84%. On June 29, 1970 the Secretary of the County Civil Service Commission forwarded to the Mayor of the village a certification of eligibles for police patrolman with a letter which sets forth the details of an interview held on June 23, 1970 with the petitioner regarding his qualifications for this position. The certification of eligibles contained only one name — that of the petitioner. Opposite “ Title ” on the form appeared “ Police Patrolman ”, opposite “ Duration ” were two blank squares, one of which was to be checked 11 Permanent ’ ’ or “ Temporary for-”. An “ X ” was placed in the box next to ‘c Temporary ’ ’ and the words ‘ ‘ for six months ’ ’ were typed in following.
*1024 On July 8, 1970 the petitioner signed his oath of office which contained a statement that he would faithfully discharge the duties of 1 ‘ provisional patrolman as a regular patrolman ”.
The letter of termination from the Acting Police Chief dated August 14, 1970 requested petitioner’s resignation as a ‘‘ probationary patrolman” effective August 16, 1970 and stated, further, that ‘ ‘ your probationary period will be severed on that date
The determination as to the petitioner’s rights in this matter depends upon his status. The certification of eligibles list stated that he was hired as a temporary employee for a period not to exceed six months; the oath signed by the petitioner contained a statement that he was serving as a provisional employee; and the termination letter asked for his resignation as a probationary patrolman.
The status of an employee is fixed at the time of his appointment to a position in the competitive class. Absent departmental rules for the Village Police Department or contract between the village patrolman and the municipality (and there is no evidence of either in this case) petitioner’s status is governed by the applicable provisions of the Civil Service Law and the Rules for the Classified Civil Service of the County of Herkimer.
Section 35 of the Civil Service Law divides the Civil Service of the State and all its subdivisions into the classified and unclassified service. Section 40 of the statute divides the classified service into four classes designated . as the exempt, noncompetitive, labor and competitive class.
The position of village police patrolman is a position in the competitive class (Matter of Healey v. Bazinet, 291 N. Y. 430). Section 63 of the Civil Service Law provides that every original appointment to a position in the competitive class shall be for a probationary term. The Rules and Regulations of the Department of the Civil Service (4 NYCRR 4.5 [a] [1] [3]) and the Rules for the Classified Civil Service of the County of Herkimer (rule XIV [1] [a] [b] [c] [5]) provide that every permanent appointment from an open competitive list shall be for a probationary term for a specified minimum and maximum period. A probationer whose services are to be terminated for unsatisfactory service shall receive a written notice at least one week prior to such termination and upon request shall be granted an interview with the appointing authority.
Petitioner asserts that he has a probationary appointment which entitled him to a one-week notice of his termination and an interview or a hearing. Concededly, he was afforded neither.
*1025 A brief analysis of the pertinent sections of the statute and the rules appropriate to those sections insofar as they provide for permanent, temporary and provisional appointments is necessary to an understanding of petitioner’s rights here.
The actual meaning of subdivision 1 of section 63 of the statute, that ‘ ‘ every original appointment to a position in the competitive class * * * shall be for a probationary term ” is not so broad as a literal reading of it would suggest. The statute has been construed to mean that every ‘ ‘ original appointment ’ ’ which comes from an eligible list shall have a probationary term which has the possibility of ripening at its conclusion into a permanent appointment (Koso v. Greene, 260 N. Y. 491, 494-495). Consonant with the statute, section 4.5 of the Buies for the Classified Service provides that every permanent appointment from an open competitive list shall be for a probationary term. Temporary and provisional appointments are also authorized in the competitive class (Civil Service Law, §§ 64 and 65). Such appointments are exceptions, however, to the fundamental policy that vacancies in the classified civil service be made according to merit arid fitness ascertained by competitive examination (N. Y. Const., art. V, § 6); Matter of O’Reilly v. Grumet, 284 App. Div. 440, 444, affd. 308 N. Y. 351). Since they are merely stopgap positions with no possibility of ripening into a permanent appointment they are not “ original appointments ” as defined in section 63 and no probationary term is mandated for them (Koso v. Greene, supra, p. 495).*
Temporary appointments are authorized where the need for such service “is important and urgent” (Civil Service Law, § 64). In the absence of a clear showing of an abuse of discretion the court will assume that the need was 1 ‘ important and urgent ’ ’ sufficient to permit the use of a temporary appointment. If the petitioner indicates a willingness to accept a temporary employment and written notice of his selection so indicates, as it does here, then the petitioner is fully advised of the temporary nature of his appointment and such does not ripen into permanent employment (Matter of Hilsenrad v. Miller, 284 N. Y. 445, 449-450).
Provisional appointments authorized by subdivision 1 of section 65 provide that 11 whenever there is no appropriate eligible list available for filling a vacancy in the competitive class, the appointing officer may nominate a person to the * * * municipal commission for non-competitive examination ” and if *1026 such person is certified by the commission as qualified he may then be appointed, provisionally, to fill such vacancy pending a competitive examination. The ambit of this section of the statute is more clearly understood when read in conjunction with section 4.2(b) of the Buies for the Classified Service, which provides that whenever a vacancy exists in a competitive class position and an open competitive examination does not result in an eligible list containing the names of at least three persons willing to accept appointment, the commission may permit the appointing authority to nominate a person for noncompetitive examination and if the nominee shall be certified as qualified he may be appointed to fill such vacancy (4 NYCRR 4.2 [b]). The noncompetitive examination provided for may consist of a review and evaluation of the training, experience and other qualifications of the nominee without written, oral or other performance tests (Civil Service Law, § 65, subd. 1).
Clearly, then, by the terms of the statute itself, if there is no appropriate eligible list available, regardless of whether a competitive examination has been held, a provisional appointment may be made. However, where there has been a competitive examination and the appropriate eligible list contains less than three names, the appointing authority may make a provisional appointment (4 NYCRR 4.2 [b]). In either event, the authorized provisional appointment may be made in the competitive class only if the person to be provisionally appointed is certified as qualified after a noncompetitive examination (Civil Service Law, § 65; 4 NYCRR 4.2[b]). In this case, such an examination was conducted in the form of an interview of petitioner on June 23, 1970 and was evidenced by the letter of June 29, 1970 from the Herkimer County Civil Service Commission which certified petitioner as qualified for the position of village patrolman (Civil Service Law, § 65, subd. 1).
The termination letter signed by the Acting Police Chief, regardless of how he denominated petitioner’s status, did not alter the status as fixed by the appointing authority at the time of appointment. The use of the term “probationary patrolman” by the Acting Chief of Police of the Village did not and could not create a status which did not exist for the petitioner (cf. Matter of Orloff v. City of Gloversville, 34 A D 2d 1080).
The petitioner cannot succeed here because there is no evidence in this record that his status at the time of his appointment was a permanent appointment with a probationary term (Matter of Hilsenrad v. Miller, 284 N. Y. 445, 450, supra). Petitioner’s appointment as a village patrolman was a temporary or a provisional appointment conferring no legal rights of tenure. In *1027 either case, he was not entitled to a one-week notice of the termination of his services, nor to an interview or a hearing since these are all incidents of legal tenure (Matter of Daub v. Coupe, 9 A D 2d 260, 267; Matter of Riggi v. Blessing, 9 A D 2d 423, 424, affd. 10 N Y 2d 917; Koso v. Greene, 260 N. Y. 491, 495, supra).
Petitioner not being entitled to the relief requested in his petition, the same is accordingly dismissed.

 Original appointment may also have reference to the date that an employee was first appointed from a competitive civil service eligible list (Matter of Horn V. Gillespie, 267 N. Y. 333; Matter of Marcus v. Ingersoll, 266 N. Y. 359).